# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ARMANDO OSEGUEDA and ROBERT PALOMINO,

Plaintiffs,

v.

STANISLAUS COUNTY PUBLIC SAFETY CENTER, *et al.*,

Defendants.

Case No. 1:16-CV-1218-LJO-BAM

MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTION TO DISMISS

(ECF No. 11)

Plaintiffs Armando Osegueda and Robert Palomino ("Plaintiffs") commenced this putative class action suit against Defendants Stanislaus County Public Safety Center ("PSC"); Stanislaus County Sheriff's Office ("Sheriff's Office"); Adam Christianson, in his official capacity as Stanislaus County Sheriff; Bill Duncan, in his official capacity as PSC Facilities Captain; Ronald Lloyd, in his official capacity as Captain of the Correctional Emergency Response Team and the Commander of the Facility Training Officer Program at PSC; James Shelton, in his official capacity as a classification officer at PSC; Steven Verver, in his official capacity as a sergeant at PSC; the Stanislaus County Board of Supervisors[1]; and Birgit Fladagar, in her official capacity as District Attorney of Stanislaus County (collectively, "Defendants"). First Amended Complaint ("FAC"), ECF No. 8. Plaintiffs assert eight claims against Defendants under 42 U.S.C. § 1983 ("§ 1983") relating to their treatment as pre-trial detainees at PSC and the Stanislaus County Men's Jail ("Men's Jail") and seek both injunctive relief and monetary damages. *Id*

Now before the Court is Defendants' motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] ECF No. 11. Defendants additionally seek to strike portions of the FAC

---

[1] Plaintiffs subsequently moved to dismiss the Board as a Defendant. ECF No. 15 at 15. The Board is thereby DISMISSED as a Defendant in this case.

[2] All further references to any "Rule" are to the Federal Rules of Civil Procedure, unless otherwise indicated.

pursuant to Rule 12(f) and request that the Court dismiss Plaintiffs' right to counsel claims on the grounds of abstention. *Id.* Plaintiffs filed their opposition (ECF No. 15), and Defendants replied (ECF No. 16). The matter is appropriate for resolution without oral argument. *See* E.D. Cal. L.R. 230(g). Having reviewed the record and the parties' briefing in light of the relevant law, the Court GRANTS IN PART and DENIES IN PART Defendants' motion.

### LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a

1  complaint . . . must contain either direct or inferential allegations respecting all the material

2  elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562.

3  To the extent that the pleadings can be cured by the allegation of additional facts, a plaintiff should

4  be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*,

5  911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

6      Finally, in ruling on a Rule 12(b)(6) motion, "[a] court may take judicial notice of

7  [undisputed] matters of public record' without converting a motion to dismiss into a motion for

8  summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *see also*

9  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("courts must consider the

10  complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule

11  12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference,

12  and matters of which a court may take judicial notice."). Moreover, the court is permitted to

13  consider matters that are proper subjects of judicial notice under Rule 201 of the Federal Rules of

14  Evidence: facts that are not subject to reasonable dispute because they are "generally known within

15  the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources

16  whose accuracy cannot reasonably be questioned." *See Lee*, 250 F.3d at 668.

17                          **FACTUAL ALLEGATIONS**[3]

18  **I.    The B-Max**

19      The "B-Max" is the maximum security unit at PSC. FAC ¶ 1. Conditions at the B-Max are

20  "inhumane and debilitating." *Id.* ¶ 18. Each detainee at the B-Max shares a cramped 6.5' x 12',

21  minimally furnished cell with one other detainee. *Id.* Detainees at the B-Max have very limited

22  access to telephone calls to their attorneys or family members, contact visits with attorneys,

23  recreational time or "yard privileges" (meaning access to a cell with a telephone and television),

24  rehabilitative, vocational, recreational, or educational programming. *Id.* ¶ 19. They have no access

25  to the outdoors, no physical equipment, and no recreational equipment. *Id.* Detainees are confined

26

27

28  _____
[3] These allegations are drawn from the FAC, the truth of which the Court must assume for purposes of a Rule 12(b)(6) motion to dismiss.

3

in their cells for periods of 38, 54, 60 or up to 80 continuous hours depending on their yard schedules. *Id.* ¶ 23.

There is only one room at the B-Max used for attorney-client meetings. *Id.* ¶ 33. This room is adjacent to and shares a vent with a staff bathroom, which results in correctional officers using the bathroom being able to hear conversations between detainees and their attorneys. *Id.* Detainees meeting with their attorneys are handcuffed in a "lock box," shackled at the waist and ankles, and secured by a bolt to the floor. *Id.* ¶ 34. The restrictions are uncomfortable and prevent detainees from writing notes during their meetings and drawing diagrams for their attorneys. *Id.*

Detainees placed on disciplinary action are not permitted to have yard access and therefore are impeded from calling their attorneys. *Id.* ¶ 26. The decision to place a detainee on disciplinary action is made through a "cursory, in-house review" that does not afford the detainee any counsel or enable him to respond meaningfully. *Id.* This results in detainees on disciplinary action being denied the assistance of counsel while they are being disciplined. *Id.*

Additionally, detainees have been subject to excessive force during "raids" or searches of their cells through the use of pellets, block guns, and tasers. *Id.* ¶ 28. On at least two occasions, detainees have been removed from their cells, placed in the "yard" with or without clothing aside from underwear, and forced to remain on their knees for hours during these raids. *Id.* ¶ 29. Officials have also removed detainees' legal materials from their cells during the raids. *Id.* ¶ 30. B-Max staff have admitted to conducting searches upon cells belonging to detainees who have been classified as Norteno or Northern Hispanics "for reasons related to retaliation for refusals to engage in conversation with staff rather than for penological interests." *Id.* ¶ 59.

Placement in the B-Max is often made based on unproven charges that the detainee is a Norteno or Northern Hispanic Gang member. *Id.* ¶ 9. As of the date of the FAC, there are 15 pre-trial detainees in the B-Max who are classified as active Norteno gang members. *Id.* ¶ 5. These detainees have been housed in the B-Max for periods ranging between five months and seven years. *Id.* Half of these detainees have not received meaningful review of their placement in the B-Max for over three years, *id.*, which appears to be in violation of the Sheriff's Department's written policy that all detainees be granted a classification review every three months. *Id.* ¶ 14. Detainees

furthermore lack any meaningful way to address the conditions of their confinement, as Defendant Clifton has informed them that "housing is not a grievable matter." *Id.* ¶ 27. Similarly, detainees are denied the ability to make citizens' complaints about officer misconduct or other "disproportionate and harsh treatment," and have been informed that they are "not [a] citizen, you are an inmate." *Id.* ¶ 36.

## II.   Norteno and Northern Hispanic "Tanks" at the Men's Jail

Upon booking in Stanislaus County detention facilities, detainees are asked whether they are an "active gang member" or a "drop-out." *Id.* ¶ 40. They are not provided the option to state that they are neither. *Id.* Detainees who are classified as Active Norteno or Northern Hispanic are issued green and white jumpsuits, which in Stanislaus County, denotes administrative segregation. *Id.* ¶ 41. If these detainees are placed in the Men's Jail, they are housed in 12-man "active tanks." *Id.* ¶ 41, 44. Each tank is 25' x 20', and is equipped with six bunk beds and two toilet/sink combinations, two tables, and one telephone. *Id.* ¶ 45, 47. The tanks house both pre-trial detainees and individuals serving misdemeanor sentences. *Id.* ¶ 48.

Detainees housed in the "tanks" have yard privileges outside "in a series of cages without recreational equipment" for no more than three hours, two times per week. *Id.* ¶ 49. Detainees are restrained through the use of waist chains, shackles, and lock boxes that tightly secure their hands to their waists during attorney visits, when in court, and during personal visits. *Id.* ¶ 50. The lock boxes used at the Men's Jail are larger than those used at PSC and have caused detainees to experience pain, cramping, and numbness. *Id.* ¶ 51.

During searches of the cells, correctional officers use shotguns and block guns to shoot into the cells while ordering detainees to "get down." *Id.* ¶ 54. These raids have resulted in detainees being hit with fire from the shotguns and block guns. *Id.* ¶ 55. Furthermore, correctional officers use "flash bang" grenades in each tank prior to searches. *Id.* ¶ 56. Correctional officers use these methods despite not being endangered. *Id.* ¶¶ 54, 56.

Detainees classified as active Nortenos, whether housed at the Men's Jail or PSC, are denied access to rehabilitative programs, anger management classes, parenting classes, educational programs, vocational programs, and if convicted, are denied access to the Alternative Work

Program or Ankle Monitor Programs that are available to others. *Id.* ¶ 57. Detainees who have inquired about access to these programs have been denied relief under the justification that "gang members are not trying to rehabilitate themselves." *Id.* ¶ 58.

**III.     Plaintiffs and Their Putative Classes**

Osegueda is a pre-trial detainee who has had no significant rule violations since his detention began in 2012. *Id.* ¶¶ 1, 64. He spent over three years in the B-Max, without meaningful review of his placement, which is a violation of the Sheriff's Department written policy. *Id.* ¶¶ 2, 14. Specifically, Osegueda was placed in B-Max on October 17, 2012, and did not receive a classification review until May 2016. *Id.* ¶ 13, 15. Osegueda was moved from B-Max into an "Active Norteno" tank on or around August 2016, but is subject to return to B-Max without warning or hearing. *Id.* ¶ 17.  Osegueda seeks relief on his own behalf and those similarly situated who have been housed in the B-Max without meaningful review of their placement. *Id.* ¶ 1.

Palomino is a pre-trial detainee who has had no significant rule violations since his detention began in 2013. *Id.* ¶ 65. Palomino spent more than three years in the B-Max due to his classification as a Norteno, before being "downgraded" and placed in an Active Norteno tank at the Men's Jail. *Id.* Palomino seeks relief on his own behalf and those similarly situated who have been classified as Nortenos or Northern Hispanics without meaningful review of this classification. *Id.* ¶ 38.

**DISCUSSION**

**I.     Request for Judicial Notice**

Defendants have asked that this Court take judicial notice of both Plaintiffs' criminal case records from the Stanislaus Superior Court, including the charges on their indictments, and section 1050 of Title 15 of the California Code of Regulations, which governs the classification plans of detention facilities. ECF No. 11-2. Plaintiffs oppose the request as it relates to their pending criminal charges, on the grounds that the information is "inflammatory, not relevant, and is only undertaken in an effort to prejudice this court." ECF No. 15 at 17.[4] The Court understands that Plaintiffs are presumed innocent until proven guilty and agrees that Defendants' usage of the term

---

[4] Pincites refer to CM/ECF pagination located at the top of each page.

"accused murderers" to describe Plaintiffs is unnecessary and inappropriate in these proceedings. Nevertheless, because both 15 C.C.R. § 1050 and Plaintiffs' Stanislaus County criminal records are undisputed matters of public record and proper subjects of judicial notice under Rule 201, the Court GRANTS Defendants' request.

## II.    Substantive Constitutional Violations

Because the FAC alleges various constitutional violations against multiple defendants, including municipal entity defendants, the Court finds it appropriate to first address whether Plaintiffs have alleged facts that plausibly support constitutional claims before addressing liability as to each Defendant. *See, e.g.*, *Shorter v. Baca*, 101 F. Supp. 3d 876, 890 (C.D. Cal. 2015).

### a.   First Cause of Action: Fourteenth Amendment -- Conditions of Confinement[5]

Plaintiffs first assert that conditions in the B-Max are unconstitutional. FAC ¶¶ 76-86. Distilled, Plaintiffs argue (1) that conditions in the B-Max, as described above, amount to disproportionate punishment that lacks a legitimate justification; and (2) Defendants' awareness of the conditions in the B-Max amount to deliberate indifference. *Id.*

Conditions of confinement claims brought by pre-trial detainees are analyzed under the Due Process clause of the Fourteenth Amendment rather than the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003); *see also Pierce v. Cty. of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008) ("Under the Due Process Clause, detainees have a right against jail conditions or restrictions that 'amount to punishment.'"). "[T]o constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement." *Demery v. Arpaio*, 378 F.3d 1020, 1030 (9th Cir. 2004) (citing *Bell v. Wolfish*, 441 U.S. 520, 537 (1979)). In *Bell*, the Supreme Court explained as follows:

> [I]f a particular condition or restriction of pre-trial detention is reasonably related to a
> legitimate governmental objective, it does not without more, amount to 'punishment.'

---

[5] The FAC includes under this claim allegations that confinement in the B-Max is "designed to coerce Plaintiffs to provide information or accept pleas" offered by the District Attorney, in that Defendants' policies are not legitimately related to security needs. FAC ¶ 82-84. To the extent Plaintiffs argue that their confinement in the B-Max is the result of Defendants' policies intended to "coerce" them into "debriefing" and becoming informants for the State, and/or accept plea offers made by the District Attorney, the Court finds that these allegations do not fit within the parameters of a Fourteenth Amendment conditions of confinement claim. Accordingly, insofar as this claim refers to the allegations regarding Defendants' purported coercion of Plaintiffs, it is DISMISSED WITH LEAVE TO AMEND.

> Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

441 U.S. at 439. "Legitimate nonpunitive governmental objective include 'maintaining security and order' and 'operating the [detention facility] in a manageable fashion.'" *Pierce*, 526 F.3d at 1205 (quoting *Bell*, 441 U.S. at 540 n. 23). Furthermore, while prison administrators may be justified in placing certain detainees in more restrictive conditions on the grounds of these legitimate nonpunitive governmental objectives, there is nevertheless a constitutional floor that conditions may not fall beneath, even in heightened security units, such as the B-Max at PSC. *See, e.g.*, *Lopez v. Smith*, 203 F.3d 1122, 1132-33 (9th Cir. 2000). At a minimum, the Constitution mandates that detention facilities provide for detainees' "basic human needs" in accordance with "[c]ontemporary standards of decency." *See Helling v. McKinney*, 509 U.S. 25, 32-33 (1993) (citing *DeShaney v. Winnebago Cty. Dept. of Social Svcs.*, 389 U.S. 189, 199-200 (1989) and *Estelle v. Gamble*, 429 U.S. 97, 103-104 (1976)). In determining the standard for the constitutional rights of pre-trial detainees, the Court may look to decisions defining the constitutional rights of prisoners under the Eighth Amendment. *Mink*, 322 F.3d at 1120 ("In light of the Supreme Court's observation that the due process rights of pre-trial detainees are 'at least as great as the Eighth Amendment protections available to a convicted prisoner," … we have recognized that, even though the pre-trial detainees' rights arise under the Due Process Clause, the guarantees of the Eighth Amendment provide a *minimum standard of care* for determining their rights …") (emphasis in original). For instance, in *Lopez*, the Ninth Circuit found that summary judgment for prison officials was inappropriate when the plaintiff alleged he was denied access to outdoor exercise while he was segregated from other inmates in a secured housing unit. 203 F.3d 1122, 1132-33 (9th Cir. 2000). The Ninth Circuit reasoned that although the record demonstrated that the plaintiff was segregated for his own protection pursuant to the prison's policies, the prison failed to explain why the plaintiff "was not given some other opportunity for outdoor exercise." *See id.*

Although the law in this area remains somewhat unsettled, the Ninth Circuit has indicated that claims brought by pre-trial detainees for inhumane conditions of confinement under the

Fourteenth Amendment should be evaluated under the objectively unreasonable standard articulated by the Supreme Court in *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015), in the context of deciding a pre-trial detainee's excessive force claim. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1069-70 (9th Cir. 2016) (en banc). "Prior to *Kingsley*, a pre-trial detainee complaining of conditions of confinement had to allege facts that, if true, would satisfy both prongs of a bifurcated test under the Eighth Amendment." *King v. Cty. of Los Angeles*, No. CV 15-07072-SVW (AFM), 2016 WL 6902097, at *8 (C.D. Cal. Oct. 7, 2016). Under this test, the plaintiff was required to allege that (1) objectively, he was subjected to conditions that "are or were serious enough to be considered cruel and unusual," and (2) subjectively, the defendants acted with "a sufficiently culpable state of mind (*i.e.*, with 'deliberate indifference')." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991)). Subsequent to *Kingsley*, and in consideration of the Ninth Circuit's application and extension of *Kingsley* to a pre-trial detainee's failure-to-protect claim in *Castro*, it appears to this Court that a pre-trial detainee need no longer allege "deliberate indifference" to satisfy the objective prong in his conditions of confinement claim, but need only allege that defendants engaged in "objectively unreasonable" conduct. *See Castro*, 833 F.3d at 1071. In determining whether a defendant's conduct is "objectively unreasonable," courts should carefully consider the "facts and circumstances of each particular case." *Id.* (quoting *Kingsley*, 135 S.Ct. at 2473).

Here, Defendants have correctly noted that Plaintiffs, as pre-trial detainees, do not have a constitutional right to a particular classification status or housing assignment. ECF No. 11-1 at 15 (citing *Hernandez v. Johnston*, 833 F.2d 1316 (9th Cir. 1987) and *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)). Plaintiffs allege that they were housed in the B-Max on account of their classification as Norteno gang members. FAC ¶¶ 64-65. However, "California's policy of assigning suspected gang affiliates to the [Secure Housing Unit] is not a disciplinary measure, but an administrative strategy designed to preserve order in the prison and protect the safety of all inmates." *Munoz v. Rowland*, 104 F.3d 1096, 1098 (9th Cir. 1997).

California law authorizes prison administrators to "develop and implement a written classification plan designed to properly assign inmates to housing units and activities according to the categories of sex, age, criminal sophistication, seriousness of crime charged, physical or mental

health needs, assaultive/non-assaultive behavior and other criteria which will provide for the safety of the inmates and staff." 15 C.C.R. § 1050(a). The Court has taken judicial notice of information Defendants have provided that provides an additional reason why Plaintiffs may have been housed in the B-Max: Osegueda has been charged with three counts of murder, one count of burglary, one count of torture, one count of false imprisonment, and one count of participation in a criminal street gang, and Palomino has been charged with three counts of murder, one count of burglary, and one count of participation in a criminal street gang. ECF No. 11-1, Exs. A, B. The charges on both Plaintiffs' indictments are serious, which is a consideration mandated by 15 C.C.R. § 1050(a), and demonstrate that the decision to place Plaintiffs in the B-Max and to segregate him from other pre-trial detainees was warranted and served a "legitimate, non-punitive governmental objective" of maintaining security and order in the PSC.[6] *Pierce*, 526 F.3d at 1205. Therefore, to the extent Plaintiffs' first cause of action argues that their classification as Nortenos caused them to be placed in the B-Max itself is unconstitutional, the Court GRANTS Defendants' motion to dismiss this claim. In an abundance of caution, dismissal shall be with leave to amend.

Plaintiffs additionally argue that the conditions in the B-Max are unconstitutional, citing long periods of confinement in their cells, sensory deprivation, limited access to telephones and physical exercise, the denial of "good" medical care, and being deprived of access to rehabilitative programming.[7]

Insofar as the FAC alleges that detainees have been denied "good" medical care, the Court finds this to be a conclusory allegation lacking in factual support because Plaintiffs have not provided any factual allegations regarding even one instance during which either Osegueda or

---

[6] For these reasons, the Court disagrees with Plaintiffs' reliance on *United States v. Gotti*, 755 F. Supp. 1159 (E.D.N.Y. 1991), in which a court ordered that pre-trial detainees be released from administrative detention after concluding that the detention facility failed to comply with the applicable regulations regarding classification of detainees. Importantly, although the *Gotti* court ordered that the detainees be released from administrative detention, the court clarified that "the Warden is not precluded from imposing such conditions or restrictions and for such legitimate purpose as he may deem appropriate, in the future." *See* 755 F. Supp. at 1165.

[7] To this argument, Defendants point out that Plaintiffs have failed to allege that they were personally harmed by these allegedly unconstitutional conditions, and therefore lack standing to bring these claims on behalf of other pre-trial detainees. ECF No. 11 at at 14 (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975) for the notion that a "federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action.'"). However, Plaintiffs' opposition, while inartfully articulated, conveys that they meant to allege that as pre-trial detainees, they personally endured the conditions described in the FAC. With the exception of the medical care claim, there is sufficient factual content allowing the Court to infer that Plaintiffs have personally experienced the conditions described in the FAC. Any amended complaint must address this issue.

Palomino was denied medical care. *See Starr*, 652 F.3d at 1214. Accordingly, the Court GRANTS

with leave to amend Defendants' motion to dismiss Plaintiffs' medical care claim.

Insofar as the FAC alleges that being deprived of access to educational, vocational, and

rehabilitative programming on account of being housed in the B-Max is in violation of the

Constitution, the Court disagrees. "Idleness and the lack of programs are not Eighth Amendment

violations. The lack of these programs simply does not amount to the infliction of pain." *Hoptowit*

*v. Ray*, 682 F.2d 1237, 1254 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515

U.S. 472 (1995). These programs are not the type of "basic human needs" that the Constitution

mandates detention facilities must provide. *See id.*; *see also Johannes v. Cty. of Los Angeles*, No.

CV 02-03197 SVW (VBK), 2011 WL 6149253, at *14 (C.D. Cal. Apr. 8, 2011) (pre-trial

detainee's allegations "regarding vocational/educational programs fail to give rise to a

constitutional violation."). The Court GRANTS without leave to amend Defendants' motion to

dismiss Plaintiffs' claims pertaining to educational, vocational and rehabilitative programming.

Similarly, insofar as the FAC alleges that limited access to the telephones is in violation of

the Constitution, the Court does not believe this claim is cognizable. The FAC acknowledges that

that Plaintiffs had access to telephones during their yard time for about three hours per week. FAC

¶ 19. "Although prisoners have a First Amendment right to telephone access, this right is subject to

reasonable limitations arising from the legitimate penological administrative interests of the prison

system." *Johnson v. State of Cal.*, 207 F.3d 650, 656 (9th Cir. 2000). Thus, the Court GRANTS

with leave to amend Defendants' motion to dismiss Plaintiffs' claims pertaining to telephone

access.

Finally, insofar as the FAC alleges that detainees, including Plaintiffs, are subject to sensory

deprivation and are unable to engage in physical exercise during long periods of confinement while

housed in the B-Max, the Court finds that Plaintiffs have pleaded sufficient facts to state a

constitutional violation. The Ninth Circuit has noted that "[e]xercise is one of the basic human

necessities protected by the Eighth Amendment," and "[d]etermining what constitutes adequate

exercise requires consideration of 'the physical characteristics of the cell and jail and the average

length of stay of the inmates." *Pierce*, 526 F.3d at 1211-12. In *Pierce*, the Ninth Circuit found that

pre-trial detainee plaintiffs who were only afforded ninety minutes of exercise per week had established a constitutional violation, in light of the fact that they spent the approximately 21-22 hours of each day in their cells and on average, were held in pre-trial detention for 110 days or 312 days if they were "third-strike" offenders." *Id.* Here, Plaintiffs have sufficiently pleaded facts demonstrating that conditions in the B-Max are objectively unconstitutional. According to the FAC, B-Max detainees are only allotted three hours of "yard time," within which they are permitted access to an enclosed concrete cell with a telephone and a television and does not have any recreational equipment. FAC ¶¶ 19-21. Plaintiffs have alleged that they had essentially no means of engaging in physical exercise while they were both held in the B-Max for over three years, and may be returned to the B-Max, and that they were only exposed to the outdoors during their walks to and from transportation taking them to the courthouse. FAC ¶ 22. Plaintiffs have alleged that they have suffered "serious psychological and physical injury, pain, and suffering on account of conditions in the B-Max." *Id.* ¶ 80-11. These allegations sufficiently allege that Plaintiffs have suffered a constitutional harm. *Pierce*, 526 F.3d at 1211-12 (citing cases supporting the notion that "detainees who are held for more than a short time and spend the bulk of their time inside their cells are ordinarily entitled to daily exercise, or five to seven hours of exercise per week, outside their cells"); *Lopez*, 203 F.3d at 1133; *Shorter*, 101 F. Supp. 3d at 894-95.

Next, the FAC adequately alleges that Defendants' conduct was "objectively unreasonable" in failing to rectify the lack of opportunity for detainees to exercise and their lack of access to the outdoors. The FAC alleges that Defendants were made personally aware of conditions in the B-Max through grievances and complaints made by Plaintiffs and other detainees, and that they have "demonstrated a lack of regard for the constitutional rights of pre-trial detainees and a deliberate indifference to the deprivations suffered by Plaintiffs in [their] care." FAC ¶¶ 69-70. At this stage of proceedings, these allegations are sufficient to survive a 12(b)(6) motion. *See, e.g.*, *Ashker v. Brown*, No. C 09-5796 CW, 2013 WL 1435148, at *5 (N.D. Cal. Apr. 9, 2013) (finding that allegations that prison officials were "given explicit notice" of the plaintiffs' injuries "by way of administrative grievances, written complaints, and inmate hunger strikes" were sufficient to survive the higher deliberate indifference standard at the pleading stage). Therefore, the Court finds that

Plaintiffs have stated a cognizable Fourteenth Amendment conditions of confinement violation relating to exercise and sensory deprivation.

### b.  Second and Third Causes of Action: Fourteenth Amendment – Due Process

Although they are pleaded separately, Plaintiffs' second and third causes of action allege essentially the same claims—namely that Defendants have denied them due process before housing them in the B-Max by failing to provide them with "a chance to be heard," and failed to provide them with a timely classification hearing.  FAC ¶¶ 87-102.[8]

As discussed above, pre-trial detainees do not have a right to a particular classification status and PSC officials are authorized under California law to house detainees in more restrictive conditions on account of suspected gang affiliation or the seriousness of the crimes charged against them. Nevertheless, pre-trial detainees have a right "to a due process hearing before they are restrained for reasons other than to assure their appearance at trial." *Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir. 1996); *see also Shorter*, 101 F. Supp. 3d at 891("the Ninth Circuit has held that segregated confinement of pre-trial detainees, where that confinement amounts to punishment, must be accompanied by a due process hearing."). This hearing must be "an informal nonadversary hearing" held within a reasonable time after the detainee is segregated, and the detainee must be informed of the reasons he is to be segregated and must have the opportunity to present his views. *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986). The Ninth Circuit has indicated that a hearing held within 72 hours of segregation constitutes a "reasonable time." *Id.* at 1100 n. 20 (citing *Hewitt v. Helms*, 459 U.S. 460, 476-78 n. 8 & 9 (1983)).

According to the FAC, each detainee is asked upon booking whether he is an "active gang member" or a "drop-out," which then determines whether the detainee will be housed in the B-Max or an active tank. FAC ¶¶ 40-42. The FAC also alleges that detainees are placed in the B-Max or an active tank "without a chance to be heard" or "notice of what criteria will subject a person to housing in the B-Max Unit or active tanks," *id.* ¶ 88, and that Plaintiffs were housed in the B-Max for over three years without any sort of classification review, *id.* ¶¶ 64-65. Osegueda received a

---

[8] Because the Court finds that Plaintiffs have sufficiently alleged a due process violation on the grounds that they were not provided a timely classification review upon housing in the B-Max, the Court declines to address Plaintiffs' remaining claims regarding Defendants' failure to provide them with notice as to how they might be permitted to rejoin the general detainee population and periodic classification reviews.

classification review in May 2016 and was then downgraded from the B-Max to an active tank at the Men's Jail. *Id.* ¶ 15-17. Palomino was also initially housed in the B-Max and after three and a half years, was downgraded and housed in an active tank at the Men's Jail. *Id.* ¶ 43. From these allegations, it is plausible for the Court to infer that Plaintiffs did not receive the timely due process hearing mandated by the Ninth Circuit. Although Plaintiffs were asked upon booking whether they are gang members, Plaintiffs have alleged that they were not given a chance to present their views before they were housed in the B-Max or shortly thereafter. Furthermore, it appears from the FAC that they did not receive their classification reviews until more than three years after their arrival at PSC. Plaintiffs have therefore stated a due process claim. Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiffs' due process claim.[9]

### c.   Fourth Cause of Action: Fourteenth Amendment – Equal Protection

Plaintiffs next allege that their equal protection rights have been violated because unlike detainees in the general population housed in other Stanislaus County jail facilities, they "and others similarly situated" are denied access to rehabilitative, vocational, and educational programming. FAC ¶ 104-106. Although the complaint does not explicitly articulate this, the Court assumes that Plaintiffs allege that this deprivation is on account of their classification as Norteno and/or Northern Hispanic gang members, because other detainees have access to these programs.

The Court agrees with Defendants that this cause of action fails to state a claim upon which relief can be granted. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). "To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003). Here, Plaintiffs have failed to allege that they have suffered discrimination on account of a protected class, as they alleged that the disparate treatment they

---

[9] The Court notes that Plaintiffs pleaded this claim under two separate causes of action. Although the Court has determined that Plaintiffs' due process claim may proceed, Plaintiffs are advised that the claim will proceed under only one cause of action and that they should be more attentive in their drafting of their next amended complaint so as to not plead duplicative causes of action.

experienced was on account of their classification as Norteno and/or Northern Hispanic gang members. Gang membership classification does not constitute a protected class that triggers the Equal Protection Clause. *See, e.g.*, *Mitchell v. Cate*, No. 2:11-cv-1240 JAM AC P, 2015 WL 5255339, at *7 (E.D. Cal. Sept. 9, 2015); *Allen v. Hubbard*, No. CV 11-4056-SJO (PJW), 2911 WL 6202910, at *4 (C.D. Cal. Oct. 12, 2011) ("Gang membership is not a suspect class."). Furthermore, as the Court noted above, access to educational, rehabilitative and vocational programs are not fundamental rights. Therefore, the Court GRANTS Defendants' motion to dismiss this claim. Dismissal shall be with leave to amend.

### d.   Fifth and Sixth Causes of Action: Sixth and Fourteenth Amendments – Right to Counsel

Again, Plaintiffs have pleaded essentially the same constitutional claim under two separate causes of action. Here, Plaintiffs assert that conditions in the B-Max have deprived them of meaningful access to counsel because of limited access to telephones, limited space to conduct meetings with their attorneys, and a lack of privacy during these meetings. FAC ¶¶ 109-10, 112-13.

Defendants argue that the Court should abstain from deciding Plaintiffs' right to counsel claim because this claims relates to Plaintiffs' ongoing criminal proceedings in state court. ECF No. 11-1 at 22-23. Under the Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37, 44 (1971), federal courts should not interfere in ongoing state court criminal proceedings, and a federal court may not grant injunctive relief while the state court criminal case is pending. *See Samuels v. Mackell*, 401 U.S. 66, 68-74 (1971). The notion of "comity," which forms the underpinning of this principle, is "a proper respect for state functions, a recognition of the fact that the entire country is made of up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44. Abstention pursuant to *Younger* is appropriate if "(1) there are ongoing state judicial proceedings, (2) the proceedings implicated important state interests, and (3) there is an adequate opportunity in the state proceedings to raise federal questions." *Dubinka v. Judges of Superior Ct. of State of Cal. for Cty. of Los Angeles*, 23 F.3d 218, 223 (9th Cir. 1994).

The three requirements for abstention are present here. First, Plaintiffs are defendants in ongoing state criminal proceedings. ECF No. 11-2, Exs. A, B. Second, courts have recognized that the enforcement of state criminal laws is an important state interest within the meaning of *Younger*. *Kelly v. Robinson*, 479 U.S. 36, 59 (1986); *Peterson v. Contra Costa Cty. Sup. Ct.*, No. C03-5534 MMC (PR) 2004 WL 443457, at *1-2 (N.D. Cal. Mar. 2, 2004). Third, the state court proceedings provide Plaintiffs with an adequate opportunity to raise their constitutional claims. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ("when litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary"). Furthermore, in finding that *Younger* abstention was appropriate in the case of a § 1983 petitioner who had asserted a right-to-counsel claim in his state court proceedings, the Ninth Circuit noted that "the potential for federal-state friction [resulting from federal intervention] is obvious." *Mann v. Jett*, 781 F.2d 1448, 1449 (9th Cir. 1986) (quoting *Guerro v. Mulhearn*, 498 F.2d 1249, 1253 (1st Cir. 1974)). Therefore, the Court GRANTS Defendants' motion to dismiss Plaintiffs' Sixth Amendment claims on the basis of *Younger* abstention. Dismissal shall be with leave to amend.

### e. Seventh[10] Cause of Action: First and Fifth Amendments

Plaintiffs' next claim attempts to invoke the First and Fifth Amendments. It reads, verbatim, as follows:

> Plaintiff[s] and others similarly situated are classified as "Administrative Segregation" or active gang members according to invidious discrimination in contravention of the First and Fifth Amendments. Defendants act with a discriminatory purpose against Hispanic detainees.

> Plaintiffs and others similarly situated, who are classified as Active Norteno or Northern Hispanic are immediately administered a green and white jumpsuit, which denotes administrative segregation and placed into either B-Max or active tanks. Others who are classified as associates of other "gangs/disruptive groups" and associated with other classifications of inmates are housed in general population.

---

[10] The FAC erroneously titled this claim its "Sixth Cause of Action." However, because this claim was preceded by six other separately numbered claims, it is actually the seventh cause of action.

FAC ¶¶ 116-17. Even incorporating by reference the preceding paragraphs, the Court finds these allegations unintelligible. It is unclear how these allegations, even generously construed, could possibly support a finding that Plaintiffs' First and Fifth Amendment rights have been violated. Plaintiffs' opposition sheds no light on the issue. Defendants' motion to dismiss Plaintiffs' Plaintiffs' seventh claim is GRANTED. Dismissal shall be with leave to amend.

### f.   Eighth Cause of Action: Excessive Force

Plaintiffs' final claim asserts that they have been "repeatedly subjected to excessive force in connection with their pre-trial detention" through the regular searches conducted by Defendant Lloyd and other correctional officers. FAC ¶ 119. Plaintiffs claim that the correctional officers, who are supervised by Defendants Lloyd, Clifton, Duncan, and Christianson, use flash-bang grenades or fire block gun or pellet guns before unlocking cell doors as they conduct searches despite there not being any ongoing incident or threat to either the detainees or officers, and that the use of these devices has "caused ongoing injury for some similarly situated to Plaintiffs." *Id.* ¶¶ 121-22.

Excessive force claims brought by pre-trial detainees are evaluated under the "objectively unreasonable standard." *Kingsley*, 135 S.Ct. at 2473. In determining whether the force used was objectively unreasonable, courts look to a variety of factors, including: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The Court must additionally account for the "'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell*, 441 U.S. at 540).

On this claim, the Court agrees with Defendants' argument that the FAC's allegations are vague and conclusory, and therefore not entitled to the presumption of truth. Although the FAC states that Plaintiffs were "injured" by the officers' use of the devices mentioned, it provides no further details as to the extent of Plaintiffs' injuries or the amount of force these devices actually

unleashed when employed, making it impossible for the Court to evaluate the allegations under *Kingsley*'s standard. Therefore, the Court GRANTS with leave to amend Defendants' motion to dismiss Plaintiffs' excessive force claim.

**III.    Defendants' Liability**

42 U.S.C. § 1983 requires that there be an actual connection or link between the actions of Defendants and the deprivations alleged to have been suffered by Plaintiffs. *See Monell v. Dept. of Social Svcs.*, 436 U.S. 658 (1978). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under § 1983, Plaintiffs must link each named Defendant with some affirmative act or omission that demonstrates a violation of Plaintiffs' federal rights. Plaintiffs must specify which Defendant(s) he feels are responsible for each violation of his constitutional rights and the factual basis as his Complaint must put each Defendant on notice of Plaintiffs' claims against him. *See Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004).

Furthermore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). To state a claim for relief under §1983 based on a theory of supervisory liability, Plaintiffs must allege some facts that would support a claim that supervisory Defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Under § 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of respondeat superior. *Iqbal*, 556 U.S. at 677. "In a § 1983 suit or a Bivens action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer." *Id*. Knowledge and

18

acquiescence of a subordinate's misconduct is insufficient to establish liability; each government official is only liable for his or her own misconduct. *Id.*

### a.  Individual Defendants[11]

The Court determined that the FAC has stated facts that could support cognizable constitutional violations with regard to Plaintiffs' conditions of confinement and due process claims. The FAC lists the following individuals Defendants in connection with these two claims: Christianson, the elected Stanislaus County Sheriff; Duncan, PSC's Facilities Captain; Clifton, PSC's Facilities Commander; Lloyd, Captain of PSC's Correctional Emergency Response Team and the Commander of the Facility Training Officer Program; and Shelton, PSC's classification officer that dealt most directly with Plaintiffs.

Upon review of the FAC's allegations regarding each individual Defendants' connections with the two claims that may be cognizable, the Court finds that Plaintiffs' conditions of confinement claim may proceed against Defendants Clifton, Duncan, and Christianson. According to the FAC, Defendants Clifton and Duncan are responsible for conditions in the B-Max and have authorized, approved or knowingly acquiesced to these conditions. FAC ¶¶ 69-70. The Court further finds that because the FAC alleges that Christianson has been made "personally aware" of conditions in the B-Max through meetings with the Stanislaus County Criminal Defense Bar, it has sufficiently alleged § 1983 supervisory liability as to Plaintiffs' conditions of confinement claim. Similarly, the Court finds that Plaintiffs' due process claim may proceed against Defendants Clifton, Duncan, Shelton, and Christianson. For the same reasons they may be liable for Plaintiffs' conditions of confinement claim, Defendants Clifton, Duncan, and Christianson may also be liable for Plaintiffs' due process claim. Furthermore, because the FAC alleges Shelton is responsible for classification assignments and housing assignments, and has denied Plaintiffs the opportunity to challenge their classification, the Court finds that Shelton may also be held liable for Plaintiffs' due process claim.

//

---

[11] Although Plaintiffs named Sargeant Steven Verver as a Defendant in this case, Sargeant Verver is not listed under Plaintiffs' due process or conditions of confinement claims. Therefore, the Court declines to address his liability at this time. If Plaintiffs wish to proceed with claims against Sargeant Verver, they are advised to state their allegations against him specifically by name.

### b. Entity Defendants

The FAC has also named two public entities as Defendants: PSC and the Sheriff's Office.

Defendants argue that Plaintiffs have failed to state a claim for municipal liability pursuant to *Monell*. To state a claim against a public entity under *Monell*, a plaintiff must plead "(1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (2011) (internal quotation marks and citations omitted). The policy must be the result of a decision of a person employed by the entity who has final decision or policy making authority. *Monell*, 436 U.S. at 694.

Again, the Court agrees with Defendants. The FAC fails to attribute *any* policy to Defendants PSC and the Sheriff's Office, and therefore falls far short of satisfying the requirements set forth in *Monell*. The Court therefore GRANTS Defendants' motion to dismiss Plaintiffs' *Monell* claims. Dismissal shall be with leave to amend.

### c. District Attorney Fladagar

Defendants note that District Attorney Fladagar "is not named as a responsible defendant in any of Plaintiffs' claims, despite the claims naming all other individual and Stanislaus County associated Defendants." ECF No. 11-1 at 10. Defendants further point out that the FAC's only allegation pertaining to Fladagar is that she "has participated in a conspiracy with Sherriff Christianson to house people in inhumane and extreme conditions in order to encourage pre-trial detainees to debrief or accept plea deals." *Id.* at 11 (quoting FAC ¶ 75). Finally, Defendants argue that Fladagar is immune from suit under absolute prosecutorial immunity under § 1983 for initiating a prosecution and presenting the state's case, including the plea bargaining process. *Id.* (citing *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)).

In their opposition, Plaintiffs attempt to add factual allegations not contained in the FAC regarding Fladagar's conduct. ECF No. 15 at 9. However, the Court cannot consider factual allegations not made in the complaint. *See Schneider v. Cal. Dept. of Corrs.*, 151 F.3d 1194, 1198 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look

beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a

defendant's motion to dismiss") (emphasis in original). Plaintiffs further argue that Fladagar is not

immune because *Imbler* did not foreclose the possibility that prosecutors may be liable under

§ 1983 when they engage in certain investigatory or administrative activities. ECF No. 15 at 9.

At this stage of the proceedings, the Court finds that the allegations in the FAC are

insufficient to make a determination as to whether Fladagar may be held liable. Because the FAC

contains only conclusory allegations regarding Fladagar and fails to connect Fladagar to any

specific claims, the Court GRANTS Defendants' motion to dismiss Fladagar as a Defendant in this

case. In an abundance of caution, dismissal shall be with leave to amend.

**IV.    Motion to Strike**

Defendants finally ask that the Court strike two portions of the FAC: (1) Plaintiffs' prayer

for punitive damages, on the grounds that punitive damages are not recoverable against public

entities under § 1983; and (2) Plaintiffs' request that Defendants release them from the B-Max and

that Defendants present a written plan to the Court providing for alleviation of conditions in the B-

Max and a meaningful review process. ECF No. 11-1 at 25.

Rule 12(f) permits the court to "strike from a pleading an insufficient defense or any

redundant, immaterial, impertinent, or scandalous matter." The Court may only strike material from

a pleading if it falls within one of these five categories. *Whittlestone, Inc. v. Handi–Craft Co.*, 618

F.3d 970, 973–74 (9th Cir. 2010). However, the Ninth Circuit has held that "Rule 12(f) does not

authorize district courts to strike claims for damages on the grounds that such claims are precluded

by law." *Id.* at 974-75. "The proper vehicle for challenging the sufficiency of a punitive damages

claim is a motion to dismiss under Rule 12(b)(6), and not a motion to strike under Rule 12(f)."

*Walker v. McCoud Comm. Servs. Dist.*, 2016 WL 951635, at *2 (E.D. Cal. Mar. 14, 2016) (citing

*Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d. 1132, 1146 (E.D. Cal. 2010)). Accordingly, the

Court will evaluate Defendants' 12(f) motion as it relates to the punitive damages claim under the

12(b)(6) standard. *See Kelley*, 750 F. Supp. 2d at 1146. Punitive damages are proper under § 1983

"when the defendant's conduct is shown to be motivated by evil motive or intent, or when it

involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

Defendants are correct that as a matter of law, public entities cannot be sued under § 1983 for punitive damages. *Gay-Straight Alliance Network v. Visalia Unified School Dist.*, 262 F. Supp. 2d 1088, 1111 (E.D. Cal. 2001). Therefore, insofar as Defendants seek dismissal of Plaintiffs' prayer for punitive damages against PSC and the Sheriff's Office, the Court GRANTS their motion to dismiss. However, because at this stage, the Court has determined individual Defendants Christianson, Duncan, Shelton, and Clifton may be liable for two violations of Plaintiffs' Fourteenth Amendment rights, and the FAC has pleaded that these Defendants have demonstrated deliberate indifference to Plaintiffs' constitutional rights, the Court DENIES the motion to dismiss Plaintiffs' prayer for punitive damages against these individual Defendants.

As for Defendants' motion to strike Plaintiffs' prayer for injunctive relief, the Court notes that it determined that Plaintiffs have stated cognizable Fourteenth Amendment claims relating to their conditions of confinement and due process rights. Therefore, the Court declines to consider Defendants' request at this time and DENIES without prejudice the motion to strike Plaintiff's injunctive relief prayer.

## CONCLUSION AND ORDERS

For these reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART as follows:

1) As to Plaintiffs' Fourteenth Amendment Conditions of Confinement claim against individual Defendants Clifton, Duncan, and Christianson, the Motion is DENIED insofar as it alleges that Plaintiffs were not afforded adequate sensory stimulation and opportunities to exercise, the Motion is GRANTED without leave to amend insofar as it alleges that Plaintiffs were denied access to vocational, educational and rehabilitative programs, but is GRANTED with leave to amend in all other respects;

2) As to Plaintiffs' Fourteenth Amendment Due Process claim against individual Defendants Clifton, Duncan, Christianson, and Shelton, the Motion is DENIED insofar

as it alleges that Plaintiffs were not afforded a timely classification hearing upon placement in the B-Max, but is GRANTED with leave to amend in all other respects;

3) As to Plaintiffs' remaining claims regarding equal protection, the right to counsel, the First and Fifth Amendments, and excessive force, the motion is GRANTED with leave to amend;

4) As to Plaintiffs' *Monell* allegations, the motion is GRANTED with leave to amend;

5) As to Defendant Fladagar, the motion is GRANTED with leave to amend;

6) As to Plaintiffs' prayer for punitive damages against the entity Defendants, the motion is GRANTED without leave to amend;

7) As to Plaintiffs' prayer for punitive damages against individual Defendants, the motion is DENIED without prejudice.

8) As to Plaintiffs' request for injunctive relief, the motion is DENIED without prejudice.

The Court has gone to great lengths to give Plaintiffs direction on deficiencies in the FAC, which reflects carelessness in its research, organization, and presentation. Plaintiffs shall have twenty days from electronic service of this order to file an amended complaint or give notice that they will stand on the current FAC. Plaintiffs are cautioned that this will be the last opportunity to amend and that they should only amend if amendment would not be futile based on the law and findings in this Order.

IT IS SO ORDERED.

Dated:   **January 17, 2017**               **/s/ Lawrence J. O'Neill**
                                        UNITED STATES CHIEF DISTRICT JUDGE